[No. 37043.   En Banc.   November 10, 1965.]

J. C. HANSEN *et al., Respondents,* v. JAMES PAULEY *et al., Appellants.*\*

*Gordon, Goodwin & Sager* and *Warren R. Peterson,* for appellants.

*Schweppe, Reiter, Doolittle & Krug,* for respondents.

\*Reported in 407 P.2d 811.

HAMILTON, J.—This is a host-guest action, governed by Laws of 1957, ch. 132, § 1, p. 484 (RCW 46.08.080)[1] Plaintiffs, husband and wife, as invited guest passengers in defendants' automobile, suffered severe injuries in a head-on collision and initiated this suit against their hosts alleging gross negligence. Defendants appeal from an order granting a new trial following a jury verdict in their favor.

The accident occurred between 2 and 3 a.m., July 14, 1957, approximately three miles from Union, Washington, on State Highway No. 21 which meanders along the south shore of Hood Canal. State Highway No. 21 at that time was an 18 to 20 foot black-top, two-lane roadway, with 5-foot shoulders, and in the area of the collision gradually arced from the northeast into an east-west direction. Approaching the point of impact from either direction, the shoulders of the roadway broadened somewhat to accommodate the entryway of the Alderbrook Inn Resort on the north side and the graveled apron of a service station on the south side of the highway. The speed limit was 50 miles an hour.

Plaintiffs and defendants had been attending a social gathering at the home of a mutual friend 3 to 5 miles northeast of the Alderbrook Inn Resort, and were returning to Shelton where both couples resided. Unidentified food and refreshments had been served during the evening and defendant, James Pauley, had engaged in some physical activity with his son.

Mr. Pauley, an automobile dealer, was driving a new 1957 Ford sedan. Mrs. Pauley was seated to her husband's

---

[1]"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator, or the result of said owner's or operator's gross negligence or intoxication, and unless the proof of the cause of action is corroborated by competent evidence or testimony independent of, or in addition to, the testimony of the parties to the action: *Provided,* That this section shall not relieve any owner or operator of a motor vehicle from liability while it is being demonstrated to a prospective purchaser." Laws of 1957, ch. 132, § 1, p. 484.

right in the front seat, and plaintiffs, Mr. and Mrs. J. C. Hansen, were seated in corresponding positions in the rear seat. The Pauleys' son and a companion were following a considerable distance behind in a second vehicle. All were traveling in a south and westerly direction.

William H. Maxwell, driving his mother's 1956 Ford sedan was returning alone from a date. He was traveling in a north and easterly direction at a speed of about 40 miles an hour.

Both Mr. Pauley and Mr. Maxwell were familiar with the highway.

The night was dark and a light rain was falling. Visibility was otherwise reasonably good. Both vehicles had their headlights on low beam. As the Pauley and Maxwell vehicles approached each other they were on a gradual, slightly supered curve, swinging to defendants' right and to Mr. Maxwell's left. As the vehicles met, the left third of each collided with the other. The force of the impact literally demolished both vehicles and occasioned serious injuries to all occupants of defendants' vehicle.

Plaintiffs, Mr. and Mrs. Hansen, and defendant James Pauley were unable to recall events immediately preceding the collision. Mrs. Pauley testified that the instant before impact she screamed a warning that the oncoming car was going to hit them. Mrs. Hansen testified that sometime after the accident Mrs. Pauley said her outcry was to the effect that they were going to hit the oncoming car. Mrs. Hansen further testified that she could recall that sometime before the accident Mrs. Pauley cautioned her husband about speed. Mrs. Pauley denied she had so spoken to her husband and stated that in her estimation he had not driven faster than 40 miles an hour.

Mr. Maxwell, the driver of the oncoming car, testified that, as he approached the scene of the collision, he observed the headlights of the Pauley vehicle approximately 250 to 300 feet away and maintained his observation thereof up to the time of impact. Concerning events immediately prior to impact, he testified that as the vehicles came within 50 feet of one another the Pauley vehicle suddenly and

without warning swung across the center of the highway into his lane of travel and into collision with his vehicle. He said this happened so fast he did not have time to take evasive action.

At the conclusion of all of the evidence, defendants challenged the sufficiency thereof to establish gross negligence on the part of Mr. Pauley, and moved for a directed verdict and dismissal. Their motion was denied and the cause was submitted to the jury. Following a verdict for defendants, the trial court denied plaintiffs' motion for judgment notwithstanding the verdict and granted their alternative motion for new trial. The order granting a new trial was predicated upon asserted error in the giving of an instruction, a recess during the trial occasioning the absence thereafter of plaintiffs' chief counsel, and that substantial justice had not been done.

■ On appeal, defendants first assign error to the denial of their motion for directed verdict and dismissal. In approaching this assignment of error, we are, as was the trial court, cognizant of the obligation to view the evidence, together with all reasonable inferences arising therefrom, in the light most favorable to plaintiffs. *Frasch v. Leedom,* 62 Wn.2d 410, 383 P.2d 307 (1963); *Miller v. Payless Drug Stores of Washington, Inc.,* 61 Wn.2d 651, 379 P.2d 932 (1963).

■ We recognize, too, that the question of whether the conduct of an automobile driver, under the circumstances involved in a given situation, constitutes gross negligence, as that term has been defined, generally presents an issue of fact for the trier of the facts, unless but one conclusion can be drawn from the facts presented. *Hoglund v. Morgan,* 60 Wn.2d 770, 375 P.2d 506 (1962); 10A Blashfield, Cyclopedia of Automobile Law and Practice § 6617, at 626 (perm. ed.).

■ In this state, gross negligence has been, and was at the time of trial, defined as the want of slight care or the failure to exercise slight care. *Crowley v. Barto,* 59 Wn.2d 280, 367 P.2d 828 (1962). *Cf. Nist v. Tudor, ante* p. 322, 407 P.2d 798 (1965).

The evidence in the instant case, when viewed in a light most favorable to plaintiffs, reveals that the defendant driver, Mr. Pauley, suddenly and needlessly swerved his automobile into the lane of travel and the path of the oncoming Maxwell vehicle at a time when the two vehicles were 50 feet apart and approaching one another at a combined speed of from 80 to 100 miles an hour. It can hardly be gainsaid that such an act is extremely dangerous and, if committed without substantial extraneous cause, evinces a want of slight care for the safety of the driver's passengers. Certainly, it is great negligence—negligence substantially or appreciably greater than ordinary negligence. *Nist v. Tudor, supra.* Other than the defendants' denial of such an occurrence, the only explanation to be found in the record for the event is that a peculiarity in the construction of the supered curve involved tended to cause such veering on the part of southbound vehicles. This explanation, however, is somewhat neutralized by evidence to the effect that Mr. Pauley was well acquainted with the highway over which he was traveling.

All circumstances being considered, we are convinced the trial court did not err in submitting the issue of gross negligence to the jury. *Cf. Pickering v. Stearns,* 182 Wash. 234, 46 P.2d 394 (1935).

Defendants next assign error to the trial court's action in granting a new trial. As heretofore indicated the trial court predicated this order upon (a) the giving of a supplemental instruction, (b) an enforced recess during trial resulting in the subsequent unavoidable absence of plaintiffs' chief counsel, and (c) its belief that under all of the circumstances substantial justice had not been done.

After the jury had commenced its deliberations, it advised the trial court that it desired further amplification upon the meaning of gross negligence. Thereupon, the trial court submitted two additional instructions, the second of which reads:

"You are instructed that the term 'failure to exercise slight care' when used in connection with the operation of a motor vehicle along the public highways, *means to*

*operate a motor vehicle with such a degree of inattention, or rashness or recklessness as evinces a total want of care for the safety of the occupants of said motor vehicle."* (Italics ours.)

This instruction was erroneous, for it ignores the distinction between gross negligence and wanton misconduct. *Adkisson v. Seattle*, 42 Wn.2d 676, 258 P.2d 461 (1953). It incorporates the concept of an utter or complete disregard for the safety of the guests in the host's vehicle, for it places upon such guests the duty of establishing a *total* want of care on the part of the host-driver. Such is not the criterion for gross negligence now, and was not at time of trial. *Nist v. Tudor, supra; Crowley v. Barto, supra.*

The trial court did not err in granting a new trial based upon the erroneous instruction. Accordingly, we do not reach nor need we discuss the other reasons given by the trial court in its order.

The order granting a new trial is affirmed. Costs on appeal will abide the result of the new trial.

HILL, FINLEY, WEAVER, OTT, HUNTER, and HALE, JJ., concur.

ROSELLINI, C. J. (concurring in the result)—I concur in the result reached by the majority. However, I do not approve the adoption of the attempted redefinition of "gross negligence" contained in *Nist v. Tudor, ante* p. 322, 407 P.2d 798 (1965). My views are expressed in that case.

DONWORTH, J., concurs with ROSELLINI, C. J.